**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Wireless Investors LLC,<br>Plaintiff,<br>v.<br>Semtech Incorporated, et al.,<br>Defendants. | No. CV-25-02633-PHX-DJH<br>**ORDER** |

On July 15, 2026, Defendant Anduril Industries, Inc. ("Defendant") filed a Motion to Dismiss Counts 4 and 5 of the Second Amended Complaint ("SAC") (Doc. 38). Plaintiff Wireless Investors LLC ("Plaintiff") filed a Response (Doc. 39) in opposition, and Defendant thereafter filed a Reply (Doc. 40).

## I. Background

Given that the Court has already issued an extensive Order (Doc. 25) on previous motions to dismiss in this matter, the factual background will not be set out at length. Therefore, in short, Plaintiff and Defendant entered into a General Services Agreement ("GSA") in 2019.[1] (Doc. 35 at ¶ 5). Defendant allegedly breached the GSA by its notice of termination in 2025, failing to meet minimum SIM card subscriptions, and converting

---

[1] In its March 5, 2026, Order resolving Defendants' Motions to Dismiss Plaintiff's First Amended Complaint ("FAC"), the Court informed Plaintiff that it was improper under Local Rule 15.1(b) to reference exhibits attached to its inoperative original complaint. (Doc. 25 at 2 n.4). Despite this warning, Plaintiff repeated the error in its SAC. (*See*, *e.g.*, Doc. 35 at ¶¶ 18, 20). Plaintiff would be well-advised to closely read the Court's orders and the Local Rules of this District. Even still, the Court will consider these documents as they are incorporated by reference into the SAC.

SIM cards that were paid for and licensed by Plaintiff. (*Id.* at ¶ 22). In alleging its tort claims, Plaintiff claims that, "[n]otwithstanding [its] rights, [Defendant] intentionally exercised dominion and control over the subject property by removing the SIM cards and associated connectivity rights from Ensemble's control and continuing to utilize them for Anduril's own benefit - causing Ensemble substantial, ongoing, cognizable damages[.]" (*Id.* at ¶ 52; *see also id.* at ¶¶ 63–68).

Plaintiff originally filed suit against Defendant and now-dismissed defendant Semtech in state court, and Defendant removed this matter on October 10, 2025. (*See* Doc. 1). The Court later denied Plaintiff's Motion to Remand (*see* Doc. 24), and Semtech's Motion to Dismiss was granted on *forum non conveniens* grounds. (Doc. 25 at 10). In the same Order granting Semtech's Motion, the Court also partially granted and partially denied Defendant's Motion to Dismiss the First Amended Complaint ("FAC"). Specifically, the Court, construing the FAC favorably to Plaintiff, allowed Plaintiff to proceed with its breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment claims. (*Id.* at 11–14, 19). However, Plaintiff's claims for fraud, "conversion-conspiracy," tortious interference, and negligent misrepresentation were dismissed under the economic loss rule. (*Id.* at 16–19). Months later, and on the last day to amend under the Court's Rule 16 Order, Plaintiff filed a Motion for Leave to File a Second Amended Complaint (Doc. 32). Defendant did not oppose the Motion but reserved the right to file a motion to dismiss. Based on the lack of opposition, the Court allowed Plaintiff to file the SAC. (Doc. 34).[2] In the SAC, Plaintiff brings claims for breach of contract (Count 1), breach of the implied covenant of good faith and fair dealing (Count 2), and unjust enrichment (Count 3). (Doc. 35 at ¶¶ 23–43). Plaintiff additionally renewed its conversion claim (Count 4) and brought a trespass to chattels claim (Count 5). (*Id.* at ¶¶ 44–71). Defendant now moves to dismiss Counts 4 and 5. (Doc. 38).

/ / /

[2] Indeed, the Court emphasizes that Plaintiff's Motion to Amend was granted on the basis of Defendant's non-opposition (*see* Doc. 34), and was not indicative of the claims' ability to withstand the present Motion to Dismiss.

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the pleader is entitled to relief for their claims. Fed. R. Civ. P. 8(a)(2). This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Put differently, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim may be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a motion to dismiss, courts will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III. Discussion

Defendant argues that Plaintiff's Counts 4 and 5, like the tort claims brought in the FAC, are barred by the economic loss rule. (Doc. 38 at 5–7). Having considered Plaintiff's objections, the Court agrees with Defendant that both the claims arise out of the GSA and remain barred by the economic loss rule.

Under Arizona law, "[t]he economic loss doctrine prohibits certain tort actions seeking 'pecuniary damage[s] not arising from injury to the plaintiff's person or from physical harm to property.' " *Sullivan v. Pulte Home Corp.*, 306 P.3d 1, 2 (Ariz. 2013) (citation omitted). The doctrine "bars only the recovery of 'pecuniary or commercial damage, including any decreased value or repair costs for a product or property that is itself the subject of a contract between the plaintiff and defendant, and consequential damages such as lost profits.' " *Id.* at 3 (citing *Flagstaff Affordable Hous. Ltd. Partn. v. Design All., Inc.*, 223 P.3d 664, 667 (Ariz. 2010)). The economic loss rule serves to protect the expectations of contracting parties and ensure the adequacy of contractual remedies. *Id.* The economic loss rule, however, does not bar all tort claims. *Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1050 (D. Ariz. 2010). The application of the rule depends on context-specific policy considerations and underlying principles of tort and contract law. *Flagstaff*, 223 P.3d at 669.

**A. Count 4: Conversion**

Count 4 of Plaintiff's conversion claim alleges that Plaintiff "purchased, possessed, administered, controlled, and managed the subject SIM cards and associated connectivity rights." (Doc. 35 at ¶ 47). Plaintiff alleges that Defendant "intentionally exercised dominion and control over the subject property by removing the SIM cards and associated connectivity rights from [Plaintiff]'s control and continuing to utilize them for [Defendant]'s own benefit - causing [Plaintiff] substantial, ongoing, cognizable damages[.]" (*Id.* at ¶ 52).

As alleged, this conduct largely mirrors the conduct that was alleged in the FAC's "Conversion-Conspiracy" claim (*see* Doc. 1-1 at 99), which was dismissed under the economic loss rule. And like the FAC, the SAC's conversion-related conduct is again the basis of Plaintiff's breach of contract claim. In relevant part, the SAC alleges that "[Defendant] **breached the GSA**…[when Defendant] **converted** SIM cards that were paid for by and licensed to [Plaintiff]" and "[Defendant] materially breached the GSA by…[r]emoving [Plaintiff]-provisioned SIM cards and connectivity services from

[Plaintiff's] management and control." (Doc. 35 at ¶¶ 22, 28 (emphasis in original)). Again, the Court finds that because the allegedly converted SIMs were "the subject of a contract between the plaintiff and defendant," the economic loss rule bars Plaintiff's conversion claim. *Sullivan*, 306 P.3d at 3 (internal quotations and citation omitted). Perhaps attempting to sidestep this conclusion, Count 4 omits references to the GSA—references that were otherwise express in Plaintiff's previously-alleged conversion-conspiracy claim. The Court finds these omissions inconsequential. The SAC allegations still make clear that Defendant's removal of the SIM cards from Plaintiff's management and control was wrongful because it violated the GSA. Here, these "SIM cards, connectivity rights, subscriptions, and associated digital assets" are the exact subject matter of the party's GSA. (Doc. 35 at ¶ 63). Specifically, under the GSA, Defendant would pay "$3 MRC Per SIM" and "$6.67 per GB on Verizon, AT&T, and Rogers" SIMs, amongst other prices and commitments. (Doc. 1-1 at 43). Plaintiff was to be reimbursed "from time to time for reasonable and necessary expenses" that it incurred providing these services to Defendant. (*Id.* at 44). The GSA further provided that "[a]ll intellectual property and related material . . . that is developed or produced under this Agreement, is a 'work made for hire' and will be the sole property of [Defendant]." (*Id.*) And in the event of termination, Plaintiff would "return to [Defendant] any property, documentation, records, or Confidential Information which is the property of [Defendant]."[3] (*Id.* at 45). In other words, the parties had a service agreement regarding the use of the SIM cards. In such situations, the economic loss doctrine limits any injury arising out of the agreement's subject matter to the contractual expectations of the parties.

Plaintiff's allegation that "the GSA provided no contract remedy for the unlawful taking of the SIM cards" is undermined by Plaintiff pleading a breach of contract claim premised, in part, upon this same conduct. (*See id.* at ¶¶ 23–29; 51). In fact, Plaintiff cited the GSA's indemnity provision in the FAC (Doc. 1-1 at 87, 90), and the GSA states that

---

[3] Although the Court will not engage with the merits of any claim on a motion to dismiss, it should be noted that the GSA provisions cited by Defendant appear to largely cut across the merits of Plaintiff's tort claims. (*See* Doc. 40 at 7).

"[i]n the event that either Party breaches a material provision under this Agreement, the non-defaulting Party may…require the defaulting Party to indemnify the non-defaulting Party against all reasonable damages." (*Id.* at 42–43). Plaintiff has now omitted any allegation that Defendant was required to indemnify for its breaches under the GSA in its SAC. But this omission does not alter the actual terms of the GSA, which are incorporated by reference into the SAC. And even if not applicable, a party's failure to contract for any particular terms or remedies does not change the fact that a dispute arising out of contract is governed by said contract. *See Flagstaff*, 223 P.3d at 670 (holding that in the construction defect context, "if the parties do not provide otherwise in their contract, they will be limited to contractual remedies for any loss of the bargain resulting from construction defects that do not cause personal injury or damage to other property"); *Cook v. Orkin Exterminating Co., Inc.*, 258 P.3d 149, 153 (Ariz. Ct. App. 2011) ("[T]he contract law policy of upholding the parties' expectations favor limiting [Plaintiff's] claims to those in contract and, where there has been no injury besides that to the subject property, there is no strong policy reason to impose tort liability."); (*see also* Doc. 1-1 at 46 ("It is agreed that there is no representation, warranty, collateral agreement or condition affecting this Agreement except as expressly provided in this Agreement."). Ultimately, Plaintiff alleged no facts extraneous to the contract because, taking the allegations as true, Defendant's retention of the SIM card and related IP violated the parties' agreement under the GSA. As a result, Plaintiff's conversion claim is still barred by the economic loss rule, and its attempts to plead otherwise are unavailing.

**B. Count 5: Trespass to Chattels**

Because Plaintiff's trespass to chattels claim is duplicative of its conversion claim, it too will be dismissed under the economic loss rule. The same conduct alleged to be a breach of contract gives rise to Plaintiff's trespass to chattels claim. (Doc. 35 at ¶¶ 63–64 (alleging that Plaintiff possessed ownership and control interests in the "subject SIM cards" and Defendant "intentionally interfered with those interests" by "exercising control over the property without authorization")). "As the pleadings stand, [Plaintiff] cannot

proceed…on [tort theories] dependent on a duty derived from the Agreement that [Plaintiff] has conceded exists and governs the subject matter of the alleged duty." *Int'l Fran. Sols. LLC v. BizCard Xpress LLC*, 2013 WL 2152549, at *3 (D. Ariz. May 16, 2013).

**C. Defendant's Request for Attorneys' Fees**

Defendant requests attorneys' fees under A.R.S. § 12-341.01 and the GSA. (Doc. 38 at 11). The time expended by the Court and the parties on these added tort claims was not time well spent. Plaintiff's conversion and trespass to chattels claims reassert the same theories already dismissed by the Court, and it appears there was no real basis for the amendment as no new fact is alleged. Instead, Plaintiff attempts to omit certain allegations and double down on its argument that these claims are separate from its contract claims. (*See* Doc. 35 at ¶¶ 11, 60, 70). "[I]t is impermissible to amend a complaint's allegations without a good faith basis for doing so or for the sole purpose of withstanding a motion to dismiss." *Buckman v. Buckman*, 2024 WL 4625720, at *6 (D. Haw. 2024). At the same time, when Plaintiff sought to amend its FAC, Defendant filed a Notice of Non-Opposition. (Doc. 33). Had Defendant reviewed the proposed amendments at that time and brought its objections to the attention of the Court, the need for another round of briefing on a motion to dismiss would have been obviated. Presently, the Court declines to award Defendant fees. That said, should Plaintiff seek to further amend its complaint that reiterates theories of claims already foreclosed by the Court, the motion to amend will be summarily denied, and Plaintiff may be subject to sanctions for violations of Court Orders.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss Counts 4 and 5 of the Second Amended Complaint (Doc. 38) is **GRANTED**. Plaintiff's Count 4 (conversion) and Count 5 (trespass to chattels) are **dismissed**.

Dated this 20th day of October, 2026.

Honorable Diane J. Humetewa
United States District Judge